## IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TAMMY RILEY,** | : | **Civil No. 3:13-CV-1223** |
| | : | |
| **Plaintiff** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **v.** | : | |
| | : | |
| **CAROLYN W. COLVIN,** | : | |
| **Acting Commissioner of** | : | |
| **Social Security,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

### I.     Introduction

In this case we are asked to consider whether an Administrative Law Judge (ALJ) sufficiently examined the constellation of mental, emotional and medical impairments confronting the plaintiff, a worker who was closely approaching advanced age.  Finding that the ALJ's decision did not sufficiently address Riley's mental impairments in assessing her residual functional capacity, and further concluding that the ALJ's treatment of Riley's physical limitations in the residual functional capacity assessment was inadequate and internally inconsistent, we will remand this case for further consideration by the Commissioner.

## II.    **Statement of Facts and of the Case**

The plaintiff, Tammy Riley, is a social security disability claimant who has filed claims for Title II Disability benefits on May 11, 2006 (Tr. Pg. 98.), October 25, 2006 (Tr. Pg. 106.)[1] and December 1, 2009 (Tr. Pg. 115.) as well as an application for Supplemental Security Income benefits on November 24, 2009 (Tr. 116.) alleging on each application an onset date of disability of June 21, 2004.  While these protracted proceedings were pending Riley attained the age of 50, making her a worker who was closely approaching advanced age.  See 20 C.F.R. §§404.1565 and 416.965.  As a worker who is closely approaching advanced age, Riley is an individual whose employment prospects are limited, and who may often be entitled to disability benefits by virtue of the combined impact of her age and impairments, a fact which is recognized by the Social Security Administration in the Medical Vocational Guidelines promulgated by that agency.  See 20 C.F.R. Part 404, Subpart P, Appendix 2.

---

[1]The 2006 applications are shrouded in some mystery on this record.  There is no evidence in the file that the May 11, 2006 application was denied but the October 25, 2006 claim apparently was denied by an undated decision. (Tr. Pg. 117.).  Our review is limited to the 2009 applications.

### A.   Riley's Medical Impairments

Riley is also an individual who faces a cascading array of severe medical impairments, including circulation impairments in her lower extremities, degenerative disc disease, degenerative joint disease, a hernia, and obesity. (Tr. 17.)  In fact, the Administrative Law Judge who assessed Riley's case specifically found that she suffered from all of these severe physical impairments.  (Id.)  The ALJ further determined that, by virtue of these physical impairments, Riley was no longer able to return to her former employment as a store laborer.  (Tr. 26.)

These physical impairments were thoroughly documented by a state consultative examining physician, Dr. David Wampler.  (Tr. 645-653.)   Dr. Wampler's assessment of Riley, which was given "significant weight" by the ALJ, (Tr.25.), characterized Riley's prognosis as "poor for any significant change," (Tr. 649.), based upon her medical conditions.  Dr. Wampler further opined that Riley faced a series of severe physical limitations and restrictions on her work activities, stating that she could never bend, stoop, kneel, crouch, balance or climb.  (Tr. 653.)  Dr. Wampler also concluded that Riley's ability to lift and carry items was severely compromised, stating that could only occasionally lift items weighing between 10 and 25 pounds, and could only occasionally carry items weighing up to 10 pounds.  (Tr. 652.)  Finally, Dr. Wampler opined that Riley's ability to stand and walk at work was

significantly undermined, and medically limited her to 4 hours of standing or walking each day.  (Id.)

These limitations, which were found by Dr. Wampler in a report which was afforded great weight by the ALJ, would have limited Riley under social security regulations to performing sedentary work, which is defined as work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 416.967(s).  These exertional limitations found by Dr. Wampler would have also specifically excluded light work for Riley under social security regulations since in order to perform light work Riley must be able to do "lift[] no more than 20 pounds at a time with *frequent* lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b)(emphasis added.) Therefore, Dr. Wampler's finding that Riley could only occasionally carry or lift 10 pound objects seemed to preclude light work for the plaintiff.

### B.    Riley's Mental and Emotional Impairments

Beyond these undisputed physical impairments experienced by Riley, the ALJ was presented with substantial evidence which showed that Riley also suffered from a series of mental and emotional impairments.  Although Riley had graduated from high school, she reported that she had completed her secondary education from home, while she recovered from a severe traumatic brain injury. (Tr. 39.)  This brain injury

had profound and enduring consequences for Riley, consequences which were documented in 2011 by Dr. Christopher Royer, who examined and assessed Riley. (Tr. 688-694.)   As a result of this examination, Dr. Royer diagnosed Riley as suffering from a Cognitive Disorder, Generalized Anxiety Disorder, Pain Disorder and Borderline Intellectual Functioning. (Tr. Pg. 690.) Dr. Royer noted the Riley had IQ testing done in school many years before her alleged onset date showing an IQ range between 109-115.  (Tr.  689.)  Dr. Royer's IQ testing, however, revealed a significant decline in Royer's intellectual functioning, and disclosed a Verbal IQ of 74, Performance 95 and a Full Scale IQ of 82.  (Tr. 690.)  It was Dr. Royer's opinion that Riley's IQ had dropped more than fifteen points, and Dr. Royer assigned Riley a Global Assessment of Functioning score of 50, a GAF score which was consistent with a moderate to severe level of intellectual impairment.[2]  (Tr. 691.)  Dr. Royer also

---

[2]A GAF score, or a Global Assessment Functioning scale, takes into consideration psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness and is not supposed to include the consideration of impairment in functioning due to physical (or environmental) limitations.  *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision*, 34, Washington, DC, American Psychiatric Association, 2000.  ("DSM-IV-TR").  The "GAF" scale ranges from a rating of zero to 100, and is divided into ten ranges which consider "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."  Diagnostic and Statistical Manual of Mental Disorders, 32-35 ("DSM-IV") (4th ed. American Psychiatric Association 1994).  A GAF score of 50 or lower is emblematic of severe impairment, a GAF score from 51-60 indicates moderate symptoms, while a GAF score of 61-70 indicates transient and expected reactions to psychosocial

specifically concluded that Riley was moderately limited in carrying out simple instructions, (Tr. 692.), and responding appropriately to the public and co-workers. (Tr. 693.)  He further found that she was markedly impaired in exercising judgment on simple work related decisions, understanding, remembering and carrying out complex instructions and making judgments on complex instructions.  (Tr. 692.) Finally, he noted she was significantly anxious at the examination and would have a marked impairment in responding appropriately to work situations and changes in a routine or usual work setting.  (Tr. 693.)

These findings of severe mental and emotional impairments were independently verified in the medical record presented to the ALJ.  A separate Psychiatric Technique Review assessment of Riley's mental health conducted by a state agency psychologist confirmed the severe mental and emotional impairments suffered by Riley, finding that she was moderately impaired both in social functioning, as well as in maintaining concentration, persistence and pace. (Tr. 672.) For an older worker like Riley, whose past work history consisted largely of moderate to heavy labor which was now beyond her physical exertional abilities, this finding significantly restricted her employment prospects.

---

stressors. Id.

C.    **The ALJ's Decision**

On October 28, 2011, the ALJ held a hearing regarding Riley's disability claim,

a hearing at which Riley and a vocational expert testified.  (Tr. 34-91.)  In the course

of this hearing, the ALJ received into evidence the medical and mental health reports

which documented the broad array of physical, mental and emotional impairments

confronting Ms. Riley.  The ALJ also acknowledged at this hearing that Riley had

attained the age of 50 and was now  a worker who was closely approaching advanced

age.  See 20 C.F.R. §§404.1565 and 416.965.  Following this hearing, on January 20,

2012, the ALJ issued a decision, finding that Riley was not disabled under the Act,

and denying her application for disability benefits.  (Tr. 12-33.)

In this opinion the ALJ found at step 1 of the five -step social security analysis

process that Riley met the insured status requirements for benefits through December

2009, and had not engaged in substantial gainful activity since the onset of her

alleged disabilities in 2004.  (Tr. 17.)  At step 2 of the ALJ's analysis the ALJ

concluded that Riley suffered from an array of severe medical impairments, including

circulation impairments in her lower extremities, degenerative disc disease,

degenerative joint disease, a hernia, and obesity.  (Tr. 17.)  The ALJ declined,

however, to find that Riley experienced any severe mental or emotional impairments

at step 2 of its analysis.  The ALJ declined to make this finding at step 2, a threshold

step in this process, despite the presence of multiple medical reports documenting such impairments, choosing instead to conduct a weighing of the evidence at this preliminary stage of the proceedings, a weighing process which led to ALJ to discount these mental impairments as severe. (Tr. 18-21.) Yet, even as the ALJ discounted the severity of these well-documented impairments at step 2, the ALJ acknowledged a responsibility to consider these impairments at the final step in this process, when determining Riley's residual functional capacity. (Id.)

Having recognized a responsibility to fully consider these physical, mental and emotional impairments when assessing Riley's residual functional capacity, a key component in the assessment of this disability claim, the ALJ then reached an assessment of Riley's physical capabilities that was at odds with the medical evidence which the ALJ assigned great weight, (Tr. 25.), Dr. David Wampler's assessment of Riley. (Tr. 645-653.) This consultative examination, which was given "significant weight" by the ALJ, (Tr. 25.), characterized Riley's prognosis as "poor for any significant change," (Tr. 649.), based upon her medical conditions and opined that Riley could never bend, stoop, kneel, crouch, balance or climb. (Tr. 653.) Dr. Wampler further concluded that Riley's ability to lift and carry items was severely compromised, stating that she could only occasionally lift items weighing between 10 and 25 pounds, and could only occasionally carry items weighing 10 pounds. (Tr.

8

652.)  These limitations confined Riley to sedentary work under social security regulations since sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 416.967(s).  These exertional limitations found by Dr. Wampler also specifically excluded light work for Riley since in order to perform light work Riley must be able to do "lift[] no more than 20 pounds at a time with *frequent* lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 416.967(b)(emphasis added.)

Notwithstanding the fact, that the ALJ credited and gave great weight to Dr. Wampler's report, which made medical findings that appeared to limit Riley to sedentary work, the ALJ found that Riley could perform light work, with restrictions on bending, stooping and kneeling. (Tr. 22.) The inconsistency between the medical evidence which the ALJ credited, and the findings that the ALJ reached based upon this evidence, was not explained in the ALJ's decision.  Moreover, even though the ALJ acknowledged the need to address Riley's mental and emotional limitations when formulating a residual functional capacity assessment for the plaintiff, the RFC ultimately adopted by the ALJ did not address these limitations in any meaningful way, but only imposed physical and exertional limits on Riley.  (Tr. 22.)  Thus, the residual functional capacity adopted by the ALJ in Riley's case simply stated that she

could "perform light work . . . , except the claimant is limited to the following: sitting for thirty minutes at a time, standing for thirty minutes at a time, walking for thirty minutes at a time; sitting for four hours, standing for four hours, and walking four hours each in an eight-hour workday with an option to sit or stand; frequently reaching, handling, and fingering; and never bending, stooping, or kneeling." (Id.) On the basis of this RFC assessment the ALJ then concluded that, even for a worker who was approaching advanced age like Riley, there were substantial jobs in the national economy, and denied her application for benefits. (Tr. 26.)

This appeal followed. (Doc. 1.) Having reviewed the briefs of the parties, and carefully examined the ALJ's opinion in light of the evidence and the legal standards governing such opinions, we conclude that this decision did not sufficiently address Riley's mental impairments in assessing her residual functional capacity, and further conclude that the ALJ's treatment of Riley's physical limitations in the residual functional capacity assessment was inadequate and internally inconsistent. Therefore, we will remand this case for further consideration by the Commissioner.

## III.   **Discussion**

### A.   **Standards of Review–The Roles of the Administrative Law Judge and This Court**

Resolution of the instant social security appeal involves an informed

consideration of the respective roles of two adjudicators–the administrative law judge (ALJ) and this Court.  At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits.  To receive disability benefits, a claimant must present evidence which demonstrates that the claimant has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 432(d)(1)(A).  Furthermore,

> [a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

In making this determination the ALJ employs a five-step evaluation process to determine if a person is eligible for disability benefits.  See 20 C.F.R. § 404.1520.

See also Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).  If the ALJ finds that a plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further.  See 20 C.F.R. § 404.1520.  As part of this analysis the ALJ must sequentially determine:  (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work.  See 20 C.F.R. § 404.1520.

This disability determination also involves shifting burdens of proof.  The initial burden rests with the claimant in steps 1 through 4 to demonstrate that he is unable to engage in past relevant work.  If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform.  Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).

The ALJ's disability determination must also meet certain basic procedural and substantive requisites.  Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination.  Thus, in order to facilitate review of the decision under the

substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Com. of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

Once the ALJ has made a disability determination, it is then the responsibility of this Court to independently review that finding. In undertaking this task, this Court applies a specific, well-settled and carefully articulated standard of review. In an action under 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security denying plaintiff's claim for disability benefits, Congress has specifically provided that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g).

The "substantial evidence" standard of review prescribed by statute is a deferential standard of review. Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). When reviewing the denial of disability benefits, we must simply determine whether the denial is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211,

1213 (3d Cir. 1988); see also Johnson v. Commissioner of Social Sec., 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)." Johnson, 529 F.3d at 200. See also Pierce v. Underwood, 487 U.S. 552 (1988). It is less than a preponderance of the evidence but more than a mere scintilla of proof. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)(quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).

A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). However, in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported by substantial evidence." Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966). Moreover, in conducting this review we are cautioned that "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference,

14

particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.' <u>Walters v. Commissioner of Social Sec.</u>, 127 F.3d 525, 531 (6th Cir.1997); <u>see also</u> <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 801 (10th Cir.1991) ('We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.')." <u>Frazier v. Apfel</u>, No. 99-715, 2000 WL 288246, *9 (E.D. Pa. March 7, 2000).  Furthermore, in determining if the ALJ's decision is supported by substantial evidence the Court may not parse the record but rather must scrutinize the record as a whole.  <u>Smith v. Califano</u>, 637 F.2d 968, 970 (3d Cir. 1981).

### B. <u>This Case Should Be Remanded for Further Assessment of Riley's Residual Functional Capacity</u>

In this case, we find that there are internal inconsistencies and inadequacies in the ALJ's assessment of Riley's residual functional capacity, both in terms of the assessment of her physical limitations, and the evaluation of her mental state, which collectively compel a remand of this case to the Commissioner.  An accurate assessment of a claimant's residual functional capacity is a key step in the social security disability process since:  " ' "Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." ' <u>Burnett v. Comm'r of Soc. Sec. Admin.</u>, 220 F.3d 112, 121 (3d

Cir.2000) (quoting Hartranft, 181 F.3d at 359 n. 1); see also 20 C.F.R. §

404.1545(a)." Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001).  In conducting

this assessment "[t]he ALJ must consider all relevant evidence when determining an

individual's residual functional capacity." Fargnoli v. Massanari, 247 F.3d 34, 41 (3d

Cir. 2001).  An ALJ must also "explain his reasons for discounting all of the pertinent

evidence before him in making his residual functional capacity determination."

Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000).  Therefore:

> Although the ALJ may weigh the credibility of the evidence, he must
> give some indication of the evidence which he rejects and his reason(s)
> for discounting such evidence.  See Plummer, 186 F.3d at 429; Cotter,
> 642 F.2d at 705.  "In the absence of such an indication, the reviewing
> court cannot tell if significant probative evidence was not credited or
> simply ignored." Cotter, 642 F.2d at 705.

Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000).

In this case we find that there are several material inconsistencies and

omissions in the ALJ's assessment of Riley's residual functional capacity which, in

combination, compel a remand of this case since:  "In the absence of such

[clarification] the reviewing court cannot tell if significant probative evidence was

not credited or simply ignored." Cotter, 642 F.2d at 705.

At the outset, the ALJ's assessment of Riley's physical capabilities seems

internally inconsistent.  In reaching this assessment the ALJ gave "significant weight"

to a consultative examination conducted by Dr. David Wampler. (Tr. 25.) That examination, however, characterized Riley's prognosis as "poor for any significant change," (Tr. 649.), and found that Riley's ability to lift and carry items was severely compromised, stating that she could only occasionally lift items weighing between 10 and 25 pounds, and could only occasionally carry items weighing 10 pounds. (Tr. 652.) These limitations, which were credited by the ALJ, would have confined Riley to sedentary work under social security regulations, since sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 416.967(s). These exertional limitations found by Dr. Wampler also specifically excluded light work for Riley since in order to perform light work Riley must be able to do "lift[] no more than 20 pounds at a time with *frequent* lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b)(emphasis added.)

Notwithstanding the fact that the ALJ credited and gave great weight to Dr. Wampler's report, which made medical findings that appeared to limit Riley to sedentary work, the ALJ found that Riley could "perform light work . . . , except the claimant is limited to the following: sitting for thirty minutes at a time, standing for thirty minutes at a time, walking for thirty minutes at a time; sitting for four hours, standing for four hours, and walking four hours each in an eight-hour workday with

17

an option to sit or stand; frequently reaching, handling, and fingering; and never bending, stooping, or kneeling." (Tr. 22.) Thus, the hybrid "light work" residual functional capacity assessment made by the ALJ in this case was inconsistent with the medical opinion upon which the ALJ relied, which on its face limited Riley to sedentary work. Moreover, this hybrid "light work" RFC assessment formulated by the ALJ–which stated that Riley could do light work but also provided that she could never bend or stoop–seems internally inconsistent since light work, by definition, "implies that the worker is able to do occasional bending of the stooping type." SSR 83-14 Titles II & Xvi: Capability to Do Other Work-The Medical-Vocational Rules As A Framework for Evaluating A Combination of Exertional & Nonexertional Impairments, (S.S.A 1983).

These inconsistencies may have a material significance for Riley, a worker who is closely approaching advanced age, since the Secretary has promulgated guidelines on disability determinations that account for a claimant's physical abilities, age, education, and vocational skills as well as other factors, such as their RFC. See 20 C.F.R., Part 404, Subpart P, Appendix 2. These guidelines prescribe various grids, and persons who fall within the grids may be defined as disabled by application of these rules. This rule-making process relieves the Secretary of the need to rely on vocational experts by establishing, through rulemaking, the types and numbers of jobs

that exist in the national economy where a claimant's qualifications correspond to the job requirements identified by a particular rule. <u>Heckler v. Campbell</u>, 461 U.S. 458, 461-62 (1983). These regulations provide that the grids will direct a conclusion as to whether an individual is or is not disabled where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule. 20 C.F.R. pt. 404 Subpt. P Appx. 2, §200(a).

Under these Medical Vocational guidelines, if Riley–a person who is closely approaching advanced age–was found to be able to only undertake sedentary work, the grids may have mandated a finding that she was disabled. <u>See</u> 20 C.F.R., Part 404, Subpart P, Appendix 2, §§201.12 and 201.14. Thus, resolution of these inconsistencies could change the outcome of this case. When apparent internal inconsistencies in an ALJ's residual functional capacity assessment may have an outcome determinative impact upon a social security determination under the Medical Vocational Guideline grids, courts recognize that a remand to clarify these inconsistencies is often necessary. <u>Compare</u>, <u>Campbell v. Astrue</u>, Civ. No. 09–5356, 2010 WL 4689521 (E.D.Pa. Nov. 2, 2010), <u>with</u> <u>Anderson v. Astrue</u>, 825 F. Supp. 2d 487, 496 (D. Del. 2011). In this case, since the difference between a residual functional capacity to perform either sedentary or light work may determine the

outcome of this case, and the ALJ's assessment of Riley's residual functional capacity is riddled with these internal inconsistencies, a remand of this case is required to clarify this question.

The inconsistencies and inadequacies in this treatment of Riley's physical limitations are then compounded by the ALJ's treatment of the plaintiff's mental and emotional limitations. We find that this treatment is flawed in at least two respects.

At the outset, we believe that the ALJ erred in failing to identify any of these mental limitations as severe in step 2 of the five-step analytical paradigm that governs this social security appeal. It is well-settled that this step two severity inquiry is a *"de minimus* screening device to dispose of groundless claims." McCrea v. Comm. of Soc. Sec.,370 F.3d 357, 360 (3d Cir.2004); Newell v. Comm. of Soc. Sec.,347 F.3d 541, 546 (3d Cir.2003). Accordingly, "[a]ny doubt as to whether this showing has been made is to be resolved in favor of the applicant," id.; the claimant's burden at step two is "not an exacting one," id.; and this step should be "rarely utilized" to deny benefits. Id. at 361. Further, "the Commissioner's determination to deny an applicant's request for benefits at step two should be reviewed with close scrutiny." Id. at 360. As part of this "close scrutiny" it is clear that we cannot sustain a step two benefit denial decision, which rests upon an "ALJ's refusal to attach any significant weight to [a] physician's opinion, [since those decisions] , 'may or may not be

relevant in later steps of the sequential analysis ... but they certainly do not carry the day at step two.' " Magwood v. Comm'r of Soc. Sec., 417 F. App'x 130, 132 (3d Cir. 2008)(citations omitted).  Similarly, at this initial stage in the disability benefit review process, an ALJ errs if the ALJ makes an adverse step two determination, but fails to address some material evidence in the record which supports that disability claim. See Kinney v. Comm'r of Soc. Sec., 244 F. App'x 467, 470 (3d Cir. 2007).

Here, there was significant, material evidence which indicated that Riley's mental impairments were severe.  This evidence included the assessment of Dr. Royer and the separate evaluation of the state agency psychologist.  Given the *"de minimus"* nature of the claimant's burden at step 2, and acknowledging that "[a]ny doubt as to whether this showing has been made is to be resolved in favor of the applicant," and the claimant's burden at step two is "not an exacting one," McCrea v. Comm. of Soc. Sec.,370 F.3d 357, 360 (3d Cir.2004), we believe that the ALJ erred in not considering these mental conditions severe at step 2.

This error then appears to have affected the ALJ's subsequent analysis of this claim.  Having prematurely discounted these mental impairments at step 2, the ALJ then failed to meaningfully consider the cumulative effect of these mental limitations at step 5 of the evaluation process when formulating Riley's residual functional capacity.  Moreover, this failure to further address these issues in formulating Riley's

residual functional capacity is largely unexplained by the ALJ in its decision.  "In the absence of such an [explanation] the reviewing court cannot tell if significant probative evidence was not credited or simply ignored."  Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000).[3]  Therefore, a remand to reconsider, and expressly address, the cumulative effects of these emotional and mental impairments upon physical limitations found in Riley's residual functional capacity is also warranted.

## IV.    Conclusion

For, the forgoing reasons we will REMAND this case for reconsideration by

---

[3]For example, it may be that the ALJ believed that the premature treatment of these conditions at step 2, also satisfied the obligation to separately consider this material information at step 5.  However, the ALJ's decision does not say this/ Instead, the ALJ seems to acknowledge that these mental impairments must be considered in framing an RFC for Riley, (Tr. 19.), an acknowledgment which makes the failure to include these mental limitations in the RFC all the more puzzling.  We cannot discern from the opinion why this information seemingly was not incorporated into an RFC assessment for Riley at step 5, and we believe that this information should be considered both at step 2 and at step 5.  Indeed, case law has recognized this separate obligation to analyze  a claimant's impairments at both step 2 and step 5 of this social security analytical process in another legal context, holding that an inadvertent failure to address a claimant's condition at step 2 may still be cured by a thorough analysis of that condition at step 5.  See Lederman v. Astrue, 829 F. Supp. 2d 531, 539 (N.D. Tex. 2011).  It cannot be said, though, that an erroneous treatment of this issue at step 2 later excuses any consideration of that issue at step 5.

the Commissioner in accordance with this memorandum opinion, and IT IS

FURTHER ORDERED THAT judgment be entered in favor of the plaintiff and the

case marked closed.

An order consistent with this memorandum will be entered separately.

*S/MARTIN C. CARLSON*
Martin C. Carlson
United States Magistrate Judge

Dated:  September 26, 2014